IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

```
UNITED STATES OF AMERICA,      )
                               )
         Plaintiff,            )
                               )  Criminal Action No.
     v.                        )  08-00022-03-CR-W-SOW
                               )
JULIAN MORALES FLORES,         )
                               )
         Defendant.            )
```

**ORDER DENYING MOTION FOR RECUSAL**

Before the court is a motion for recusal of the Magistrate Judge from this case on the grounds that (1) I have predetermined that illegal aliens are not credible and (2) I have demonstrated in a past proceeding that I will assume the role of prosecutor by examining witnesses and eliciting incriminating testimony from them. Because I find no basis for defendant's complaints, his motion for recusal will be denied.

*I. BACKGROUND*

On January 16, 2008, a criminal complaint was filed charging defendant and two co-defendants with one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). According to the complaint, the Detroit FBI office was investigating a Mexican organization which was shipping marijuana to the United States inside of generators. Authorities in Kansas City were notified that Consolidated Transfer & Warehouse ("CTW") located in North Kansas City, Missouri, was a receiving point for drugs shipped from El Paso,

Texas.  On January 14, 2008, CTW received a large crate at their shipping facility with an originating shipping point of El Paso.  The name on the bill of lading was the same as that of previous bills of lading and indicated that the item in the crate was a generator.  A drug-trained dog alerted positively to the presence of illegal drugs inside the crate.  A state search warrant was obtained and 1,531 pounds of marijuana were found inside the generator.  Two Hispanic males arrived driving a Penske rental panel truck and picked up the generator.  They drove to a location in Independence, Missouri, where defendant was observed waiting for the truck to arrive and then walking toward the rear of the truck carrying a drill.  Defendant admitted that he was to be paid $1,000 to help unload the contents the of crate which he assumed to be either drugs or stolen property.

On February 6, 2008, an indictment was returned charging defendant and his two-co-defendants with one count of conspiracy to possess with intent to distribute marijuana, in violation of 21 U.S.C. § 846, and one count of possession with intent to distribute marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).  On February 14, 2008, an initial appearance and arraignment were held.  During the arraignment, the case was placed on the next available criminal trial docket, March 17, 2008.

On February 19, 2008, defendant filed a motion for extension of time to file pretrial motions. He requested that his deadline be extended to March 10, 2008. The next day, I entered an order denying the motion:

> Defendant requests that his deadline be extended to March 10, 2008. This case is set for trial on the March 17, 2008, criminal trial docket. A deadline of March 10 to file pretrial motions would result in the responses being due the day of the trial with no time for any hearings or consideration of the motions by the court. Therefore, it is
> ORDERED that defendant's motion for additional time to file pretrial motions is denied. However, if defendant should seek a continuance of the trial setting, additional time to file pretrial motions can be granted.

On February 22, 2008, co-defendant Cesar Alire-Lozano filed a motion to continue the trial. That same day, I entered an order granting the motion to continue, setting the case on the April 21, 2008, trial docket, and extending the time for all defendants to file pretrial motions to March 10, 2008.

On February 26, 2008, defendant filed a motion to suppress statements, stating that "due to time constraints imposed by the Court, defendant felt compelled to file his motion now", before having reviewed any discovery. Defendant stated that his motion was based on "information and belief" rather than on any facts gleaned from reviewing the discovery. I entered an order directing defendant to file a supplemental motion to suppress after having reviewed the discovery, and pointing out that pretrial motions were not due for another 13 days.

3

Also on February 26, 2008, defendant filed the instant motion for recusal on the above-stated grounds. On March 13, 2006, the government filed its response, arguing that asking witnesses about illegal conduct is permissible, and that a judge in a suppression hearing is the finder of fact and therefore is permitted to flesh out the record.

## *II. RECUSAL*

Title 28, United States Code, Section 455(a) provides that a magistrate judge shall disqualify himself in any proceeding in which his impartiality has been reasonably questioned. Section 455(a) provides an objective standard of reasonableness. United States v. Martinez, 446 F.3d 878 (8th Cir. 2006); United States v. Poludniak, 657 F.2d 948, 954 (8th Cir. 1981). The issue is "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows all the relevant facts of a case." Moran v. Clarke, 296 F.3d 638 648 (8th Cir. 2002) (quoting In re Kan. Pub. Employees Retirement Sys., 85 F.3d 1353, 1358 (8th Cir. 1996)); see also Fletcher v. Conoco Pipe Line Co., 323 F.3d 661, 664 (8th Cir. 2003) (stating that "disqualification is required if a reasonable person who knew the circumstances would question the judge's impartiality, even though no actual bias or prejudice has been shown" (quoting United States v. Tucker, 78 F.3d 1313, 1324 (8th Cir. 1996))). Because a judge is presumed to be impartial, a party seeking

4

recusal bears the substantial burden of proving otherwise. United States v. Denton, 434 F.3d 1104, 1111 (8th Cir. 2006).

### *A. TIMING*

Defendant's first complaint is that I set his case for trial only 33 days after his arraignment and gave defendant only ten days to file pretrial motions. I direct defendant's attention to the transcript of the arraignment during which defendants were advised as follows:

> At this point, I'm going to set the case for trial on the next available joint accelerated trial docket which will be March 17th of 2008. I don't think it's going to go out then, but if you file a motion to continue, I will readily grant it. At this moment, I will direct defense counsel to file pretrial motions within ten days. The Government will have seven days to respond. But, again, that's largely a fiction. If you want a continuance, I'll give you additional time to do what you need to do there. This is an open file discovery case here, is that right?
>
> [AUSA]: Yes, Your Honor.

(ATr. at 6)[1].

The Speedy Trial Act of 1974, as amended, mandates the commencement of the trial of a defendant not less than 30 days and not more than 70 days from the defendant's first appearance with counsel before a judicial officer of the court in which the charge is pending. In computing the 70-day time period, the periods of delay set forth in 18 U.S.C. § 3161(h) are excluded.

---

[1] "ATr." refers to the transcript of the arraignment, filed on February 28, 2008, document number 49.

5

In the Western District of Missouri, it is customary during the arraignment (i.e., normally the first appearance of the defendant with counsel) for the court to set a criminal case on the next available criminal trial docket which is at least 30 days away so as not to violate the 30-day provision of the Speedy Trial Act. During the arraignment, counsel are told that if additional time is required to prepare for trial, they may file a motion to continue the trial. Once the motion to continue is filed, the court may grant the motion and, pursuant to 18 U.S.C. § 3161(h), the time between the date of the order and the new trial setting is excluded under the Speedy Trial Act.

As mentioned above, defendant was told during his arraignment that his case was set for trial on the March 17, 2008, trial docket, which was the next trial docket at least 30 days away. Defendant was also told that he would be given any additional time he needed, if he filed a motion requesting additional time. The only request by defendant was an unreasonable request for an extension of time to file pretrial motions -- unreasonable in that the motions would not be ready to rule until the jury was being selected. Had defendant requested a continuance of the trial setting (which he clearly desired, given the first footnote of his motion), the motion to continue would have been granted and he would have been given additional

6

time to file pretrial motions. Indeed defendant was informed of this in the order.

Despite being told in that order that if a continuance of the trial were sought, the requested additional two weeks to file pretrial motions would be granted, defendant did not request a continuance; and he apparently did not read the order entered on February 22, 2008, granting a co-defendant's motion to continue the trial and extending the deadline for filing pretrial motions until March 10. I reach this conclusion based on defendant's statement in his motion to suppress, i.e., that the motion was filed without counsel having read any of the discovery because of the time constraints placed on him by the court, and based on defendant's statement in footnote 1 of his motion to recuse, complaining that a defendant facing trial for a speeding ticket in Kansas City Municipal Court[2] gets more time to prepare for trial than the 33 days allowed in this federal case. Clearly the 33-day time reference would only be accurate if the trial were still set for March 17. However, prior to the filing of this motion, the case was continued to the April 21 trial docket, meaning that defendant had so far been given 68 days to prepare

---

[2]It is my understanding that the Kansas City Municipal Court is not bound by the Speedy Trial Act which applies only in federal court. Aside from that, I have no knowledge of how the municipal court determines its trial docket.

7

for trial, and to date no one in this case has requested more time than that.

Defendant has failed to explain how the setting of criminal cases on trial dockets -- which is done the same way in every single criminal case in front of every single magistrate judge in this court[3] -- is a basis for recusal, and I fail to see any relevance.

### *B. PREDETERMINATION THAT ILLEGAL ALIENS ARE NOT CREDIBLE*

Defendant next asserts that in the case of United States v. Porfirio Almeida-Perez, 06-00260-01-CR-W-ODS, I established that

---

[3]Defense counsel is clearly aware of the standard procedure for setting cases on trial dockets in this court. Mr. Watson represented Alberto Jimenez-Marquez, 07-00334-01-CR-W-NKL, which was before Magistrate Judge Sarah Hays. The arraignment was held on October 11, 2007, and at that time the case was set for trial on the November 26, 2007, trial docket, the next available docket at least 30 days away. Mr. Watson represented Salvador Jesus Velasco-Saldana, 07-00280-06-CR-W-HFS, which was before Magistrate Judge John Maughmer. The arraignment was held on August 14, 2007, and at that time the case was set for trial on the September 17, 2007, trial docket. In both cases, defense motions to continue the trial were granted. See also the following cases before Judge Hays: United States v. Daniel Munoz, 05-00014-01-CR-W-DW, arraignment on 1/18/05 setting case for trial on 3/14/05; United States v. Gabriela Beltran, 04-00273-03-CR-W-FJG, arraignment on 9/22/04 setting case for trial on 10/25/04; United States v. Carlos Alaniz-Montano, 03-00344-01-CR-W-FJG, arraignment on 10/29/03 setting case for trial on 12/1/03. See also the following cases before Judge Maughmer: United States v. Guadalupe Longoria-Paez, 06-00380-01-CR-W-HFS, arraignment on 11/17/06 setting case for trial on 1/8/07; United States v. Javier Cazres-Saenz, 06-00324-01-CR-W-FJG, arraignment on 10/20/06 setting case for trial on 12/11/06; United States v. Sylvia Rodriquez, 06-00090-01-CR-W-DW, arraignment on 3/9/06 setting case for trial on 4/24/06. All of these defendants were represented by Henri Watson.

8

illegal aliens are *ipso facto* not credible witnesses. Defendant has misinterpreted the Report and Recommendation in that case.

Porfirio Almeida-Perez, represented by Henri Watson, defense counsel in this case, was arrested in July 2006 and charged with possessing a firearm while in the United States illegally. On August 21, 2006, Almeida-Perez filed a motion to suppress evidence and statements. The first of three hearings was held on September 6, 2006. During that hearing, Detective Luis Ortiz and Immigration Agent Tracy Raggs testified. The hearing was continued until October 31, 2006. During the second day of the hearing, the following defense witnesses testified: Sergio Almeida-Perez, Maria Juarez Galaviz, Detective Michael Miller, Urbana Perez Lopez, defendant Porfirio Almeida-Perez, and defendant Jose Almeida-Perez. Finally, on the third day of the suppression hearing, held on November 8, 2006, defendant Jose Almeida-Perez testified.

I asked clarifying questions of several witnesses, both law enforcement and defense witnesses, as well as some credibility questions. All of my questioning during all three parts of that suppression hearing is attached to this order as Exhibit 1 and is divided by witness. In order to understand some of the lines of my questioning, I will provide a brief summary of the facts of the Almeida-Perez case:

9

Police received information that the residents at the Almeida-Perez residence were selling large quantities of narcotics and also had weapons. Detective Ortiz and Special Agent Tracy Raggs (Immigration) conducted surveillance and observed men and women coming and going from the residence, including Sergio Almeida-Alvarez. Ortiz and Raggs decided to conduct a knock and talk. Sergio Almeida-Alvarez was on the porch of the residence and invited the officers inside the residence when they identified themselves. Once inside, they asked the occupants if there was anyone else present. There were three people in the two bedrooms, and the occupants stated that it was OK for the officers to call those people into the living room. When Detective Ortiz knocked on a bedroom door and opened it, he observed a black shotgun next to the bed where defendant Porfirio Almeida-Perez was sleeping. When Detective Ortiz knocked and opened the other bedroom door, he observed a rifle lying on the floor next to defendant Jose Almeida-Perez who was sleeping on the floor while his sister, Maria Almeida-Perez, was in the bed. The occupants of the house told Ortiz that only Porfirio, his wife Maria, and Jose were residents of the house and that everyone else was visiting. Ortiz presented a consent-to-search form to those three, and they signed the form. Porfirio told officers there was cocaine in the residence, but he was unable to find it. Porfirio said that everyone in the house

uses cocaine, so someone probably used it. Special Agent Raggs testified that he spoke with all of the people present and asked them if they were here legally. Police recovered three rifles, two shotguns, two grams of cocaine, and $19,353 in cash, to which a drug dog alerted positively. Porfirio's and Jose's mother told police the $20,000 cash was from the sale of a truck.

It is my practice to outline in any Report and Recommendation my reasons for crediting one witness over another when there is conflicting testimony. See Guled v. MuKasey, --- F.3d ----, 2008 WL 248745, (8th Cir., January 31, 2008) ("[A]n IJ making a credibility determination must give reasons that are specific enough that a reviewing court can appreciate the reasoning behind the decision and cogent enough that a reasonable adjudicator would not be compelled to reach the contrary conclusion", citing Chen v. Mukasey, 510 F.3d 797, 803 (8th Cir. 2007) and Singh v. Gonzales, 495 F.3d 553, 557-58 (8th Cir. 2007)); United States v. Alvarado-Rivera, 412 F.3d 942, 949-950 (8th Cir. 2005), cert. denied, 546 U.S. 1121 (2006).

The first reason I listed in discrediting Sergio Javier Almeida-Alvarez was the following:

> Sergio had been in the United States for eight months at the time of his testimony. He is employed in construction and he is paid in cash. He admitted he is in the United States illegally. **Sergio's criminal background**, i.e., unlawfully entering the United States and working for cash, diminish his credibility. (emphasis added) (p. 18 of R&R).

11

In addition, defendant points out that I relied on the fact that Sergio had been stopped by police before but had not been candid with the officers about his illegal status in the country. Contrary to defendant's argument, the reasoning behind these factors used to discredit Sergio is that he has a history of acting contrary to the laws of the United States, and he has a history of concealing information from law enforcement officers. Both factors are relevant to credibility.

Finally, with respect to Sergio, I point out that there were 12 reasons listed for finding his conflicting testimony not credible, not just the two mentioned by defendant. Sergio was evasive when answering questions, he often changed answers when asked the same question more than once, his answers were often not responsive to the questions and instead appeared to be rehearsed answers reciting key phrases he knew were important to the defendants' case, his testimony was contrary to the observations of police during surveillance, he testified that he could not remember if a gun had been pointed at him which I found not plausible, and his testimony was inconsistent with other defense witnesses' testimony.

Defendant argues that I improperly discredited Maria Juarez Galaviz based on someone else claiming she uses cocaine. I point out that the individuals who alleged Maria uses cocaine were her husband, the defendant Porfirio Almeida-Perez, and her brother-

12

in-law, defendant Jose Almeida-Perez. I also point out that defense counsel, who called Maria as a witness, never asked her whether Porfirio's and Jose's claim that she uses cocaine was true or false. In my credibility findings, I wrote the following:

> Ms. Galaviz is in the United States illegally, as is every other member of her household. According to her husband and her brother-in-law, Jose, Ms. Galaviz uses cocaine. Her willingness to unlawfully enter the United States and **allegedly** use cocaine diminishes her credibility. (emphasis added).

I listed a total of seven reasons why I discredited the conflicting testimony of Maria Juarez Galaviz, including many instances where her testimony conflicted with the testimony of other defense witnesses and the defendants themselves or defied logic, and instances where she testified inconsistently with her own earlier testimony.

With respect to Urbana Perez-Lopez, the defendants' mother, I listed the following:

> Ms. Perez-Lopez is in the United States illegally. **Her willingness to break the law** in that respect diminishes her credibility.

In addition, I pointed out that Ms. Perez-Lopez lied to police about not living at the residence (she testified at the hearing that she did indeed live there), and her willingness to lie to the authorities at her home increases the likelihood that she would lie while testifying. I listed multiple instances where Ms. Perez-Lopez's testimony conflicted with the testimony

13

of the others present in the home, and examples where her own testimony was inconsistent with what she said earlier during the hearing. I provided examples of how Ms. Perez-Lopez was evasive when asked questions she did not want to answer (and I point out that not one witness ever attempted to invoke the Fifth Amendment, nor did either of the defense attorneys come to the rescue of any of these witnesses by objecting). She also responded with what appeared to be rehearsed phrases she believed to be important which were clearly not responsive to the questions (example: when asked whether the police found anything during their search, she said, "Well, no -- yeah, they had already found something from where they found my son there, but it couldn't be seen.").

Maria Almeida-Perez, the defendants' sister, testified. In finding her testimony not entirely credible, I stated in part as follows:

> Ms. Almeida-Perez is in the United States illegally, as is every other member of her household. According to her brothers, Ms. Almeida-Perez uses cocaine. Her willingness to unlawfully enter the United States and allegedly use cocaine diminishes her credibility.

Once again, defense counsel did not ever ask Ms. Almeida-Perez whether it was true or false that she uses cocaine, an allegation made by both of the defendants. I pointed out that Ms. Almeida-Perez lied to the police about not living at the residence but testified at the hearing that she did live there,

14

and that her willingness to lie to authorities on the day of the search increases the likelihood that she would lie while testifying. I pointed out examples of inconsistencies between her testimony and the testimony of other witnesses including the defendants. I pointed out examples where Ms. Almeida-Perez testified one way and then another in response to the same questions asked multiple times.

Defendant Porfirio Almeida-Perez testified, and I found his testimony not credible. He was in the United States illegally, he had been deported multiple times before, he admitted that he uses cocaine, and he admitted that the firearms were his. "Porfirio's willingness to participate in these crimes diminishes the chances that he is someone who would testify truthfully under oath." I listed more than three pages of reasons why I found Porfirio's testimony not credible.

Defendant alleges in his motion that I "assumed the role of an advocate by cross-examining the two defendants and each of their four Hispanic witnesses, and eliciting from each of them incriminating testimony, namely, that they had committed a crime by entering the United States at a time and place other than that designated by U.S. immigration officers". First, I point out that I asked not one question of defendant Jose Almeida-Perez, although he testified on two different days of the suppression hearing. The only questions asked by me of defendant Porfirio

15

Almeida-Perez were in connection with two objections. There was no incriminating evidence elicited by me during this questioning. I was very explicit about protecting the rights of the defendants by allowing no cross examination (by anyone) except on matters dealing with credibility or matters testified about on direct examination. Defense counsel who filed this motion, however, strongly disagreed with my ruling in that regard when he was attempting to cross examine co-defendant Jose Almeida-Perez:

> Mr. Watson: Yeah. I have a couple of questions.
>
> The Court: Well, it better cover what he covered on direct because I'm not going to -- I just want to make it clear, we're not going to have a free-floating examination of this witness. And I don't know what you have in mind. I'm just trying to protect him is what I'm trying to do here. We had a very limited direct examination, and I want to limit it to that.
>
> Witness: I just didn't understand.
>
> The Court: What questions do you want to ask?
>
> Mr. Watson: Questions about when he was woken up, following up on that.
>
> The Court: Well, I'm not going to allow you to pursue it any further than what he covered on direct. Go ahead and ask whatever questions you have.
>
> Mr. Watson: That's all right. I won't ask. In that case, I won't ask anything.
>
> The Court: I want to give you an opportunity to proffer your questions.
>
> Mr. Watson: I don't think you do. That's fine. I won't ask any questions.

16

| | |
|---|---|
| The Court: | You don't think I do? |
| Mr. Watson: | No, you just told me before I even asked one question that you're going to limit me to what I'm going to inquire of this witness when I've not even said a word. |
| The Court: | Mr. Watson, please ask your questions. |
| Mr. Watson: | That's fine, Your Honor. I don't have any questions at all. |

(2Tr. at 175-177)[4].

Defendant's allegation that I cross-examined the Almeida-Perez defendants and elicited incriminating testimony from them is false.

It is well settled that a trial judge is "more than a mere moderator of the trial and has the prerogative to elicit facts necessary to a clear presentation of the issues." United States v. Flying By, 511 F.3d 773, 777 (8th Cir. 2007), citing United States v. Scott, 26 F.3d 1458, 1464 (8th Cir. 1994). However, nearly all of the case law on the issue of a judge questioning witnesses deals with proceedings before a jury.

> Although a federal trial judge may ask questions to clarify testimony, the court should not lose its color of neutrality or accentuate the prosecution's case. United States v. Van Dyke, 14 F.3d 415, 420 (8th Cir. 1994). In order to avoid **affecting the jury** by appearing to favor one side or the other, a trial court should limit its questions to clarification of specific testimony. United States v. Bland, 697 F.2d 262, 265-66 (8th Cir. 1983). A balancing test is used to evaluate whether in the context of the overall

---

[4]"2Tr." refers to the transcript of the October 24, 2006, suppression hearing, filed on October 31, 2006 (document number 53).

17

> record the court's questions destroyed the fairness of a
> trial. United States v. Bamberg, 478 F.3d 934, 940-41 (8th
> Cir. 2007).

United States v. Flying By, 511 F.3d at 777 (emphasis added).

In Acosta v. Couture, 2003 WL 272052 (S.D.N.Y., January 23, 2003), a state prisoner filed a petition for federal habeas relief claiming he had been denied impartial fact determination at a pretrial suppression hearing due to the judge's biased questioning. In denying relief, the federal court held that "the lower court asked 'meaningful questions in order to clarify issues of credibility and develop significant facts,' and thus found that Acosta was not denied his right to a fair and impartial fact determination. The court held that Acosta was not prejudiced by the court's questioning, and further, '[a]ny 'risk of prejudice was, in any event, attenuated if not nonexistent since there was no jury.''" Id. at *5 quoting People v. Acosta, 241 A.D.2d 385, 386 (N.Y. App. Div. 1997).

Alleged bias stemming from facts gleaned from the judicial proceeding will rarely be grounds for recusal. Securacom Consulting, Inc. v. Securacom Inc., 224 F.3d 273, 278 (3rd Sec. 2000), citing United States v. Antar, 53 F.3d 568, 574 (3rd Cir. 1995).

> [O]pinions formed by the judge on the basis of facts
> introduced or events occurring in the course of the current
> proceedings, or of prior proceedings, do not constitute a
> basis for a bias or partiality motion unless they display a
> deep-seated favoritism or antagonism that would make fair
> judgment impossible. Thus, judicial remarks during the

18

course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

Liteky v. United States, 510 U.S. 540, 555 (1994). See also People Helpers Foundation, Inc. v. City of Richmond, Va., 12 F.3d 1321, 1326 (4th Cir. 1993) (denial of motion to recuse upheld where judge's comments "were not made during the trial on the merits or in the presence of the jury").

My opinion that the defense witnesses who entered the United States illegally are less credible was based on the facts introduced in the case, not a "deep-seated antagonism". A judge who is less likely to believe someone who illegally enters the United States is no more "biased" than a judge who is less likely to believe someone who steals. Both are crimes, and both support a finding that if a person is willing to commit one crime, he is more likely willing to commit another, i.e., perjury.

In this case, a review of Exhibit 1 reveals that my questions of all of the witnesses, not just the illegal aliens but the police officers as well, was limited to clarifying the issues and establishing credibility. When one witness says things happened one way, and another witness says things happened another way, it is my responsibility to determine which person is likely telling the truth. If the attorneys do not ask questions that provide evidence allowing me to make this determination, it becomes my responsibility. In this case, not one credibility

19

question was asked by me until all of the attorneys in the case had indicated they had no further questions. A review of the three transcripts establishes that none of the attorneys in this case asked questions dealing with credibility. I cannot file a Report and Recommendation indicating to the District Judge that there are two versions of the incident and I cannot tell which one is true.

As mentioned above, there was no jury in this case who could be influenced by my questioning. And probably most important, defense counsel never objected to any of the questions I asked, not of any witness.

### III. CONCLUSION

Based on all of the above, I find that defendant has failed to satisfy his substantial burden of proving an inability to be impartial. Therefore, it is

ORDERED that defendant's motion for recusal is denied.

 /s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
March 13, 2008